IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY and
SIERRA CLUB,

        **Plaintiffs,**

    v.                                    CIVIL ACTION NO.  2:13-21588

**FOLA COAL COMPANY, LLC,**

        **Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND FOR CIVIL PENALTIES

### INTRODUCTION

1. This is a citizen suit for declaratory and injunctive relief and civil penalties against Defendant Fola Coal Company, LLC ("Fola") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (hereinafter "SMCRA") at its Surface Mine No. 4A in Clay County, West Virginia.

2. As detailed below, Plaintiffs allege that Fola has discharged and continues to discharge pollutants into waters of the United States in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of its West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit WV1013815 issued pursuant to Section 402 of the Clean Water Act.

3. Plaintiffs further allege that Fola's discharges of unlawful quantities of pollutants into the waters adjacent to its Surface Mine No. 4A violate the performance standards under SMCRA and the terms and conditions of its surface mining permit S200502.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (CWA citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5. On May 23, 2013, Plaintiffs gave notice of the violations and its intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)A).

6. More than sixty days have passed since notice was served. EPA, OSMRE and/or WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the May 23, 2013 notice letter.

7. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

8. Fola is a West Virginia Limited Liability Company engaged in the business of mining coal.

9. Fola is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10. At all relevant times, Fola has owned and operated Surface Mine No. 4A in Clay County, West Virginia, which is regulated by Surface Mining Permit S200502 and which

discharges pollutants into Leatherwood Creek and its tributaries, including Right and Rocklick Forks, subject to the effluent limitations of WV/NPDES Permit WV1013815.

11. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

12. Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia. It has approximately 2,000 members. It works for the conservation and wise management of West Virginia's natural resources.

13. Plaintiff The Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 2,000 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

14. Plaintiffs have members, including Cindy Rank and James Tawney, who use, enjoy, and benefit from the water quality in Leatherwood Creek and its tributaries, and the natural resources associated with those streams. They would like to recreate in areas downstream from the portion of the streams into which Fola's Surface Mine No. 4A discharges

pollutants harmful to aquatic life, including total suspended solids, conductivity and sulfate. Excessive amounts of these pollutants degrade the water quality of Leatherwood Creek and its tributaries, make the water aesthetically unpleasant and environmentally undesirable, and impair its suitability for aquatic life. Because of this pollution, Plaintiffs' members refrain from and/or restrict their usage of Leatherwood Creek, its tributaries, and its associated natural resources. As a result, the environmental, health, aesthetic, and recreational interests of these members are adversely affected by Fola's excessive discharges of these other pollutants into Leatherwood Creek and its tributaries from its Surface Mine No. 4A in violation of its NPDES and SMCRA permits. If Fola's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in Fola's permits.

15. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

16. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt

ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.

19. The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the Act, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22363. The applicable West Virginia law for issuing NPDES permits is the Water Pollution Control Act ("WPCA"), W.V. Code § 22-11-1, et seq.

20. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

21. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

22. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).

23. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

24. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January

12, 2009. See 40 C.F.R. § 19.4.

25. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

26. Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from OSMRE or from an approved state regulatory authority.

27. At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program under SMCRA. See 30 C.F.R. § 948.10.

28. Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") is that "[d]ischarge from areas disturbed by . . . mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-14.5.b.

29. The legislative rules promulgated under the WVSCMRA provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards. 38 C.S.R. § 2-3.33.c.

30. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

31. Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

32. WVDEP is the agency in the State of West Virginia that administers that State's

6

CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

## FACTS

33. On June 3, 2003, WVDEP issued West Virginia Surface Mining Permit No. S200502 to Fola for its 1743-acre Surface Mine No. 4A in Clay County, West Virginia. This permit was renewed in 2008 and remains in effect.

34. Runoff from Fola's Surface Mine No. 4A drains into channels and ponds that discharge primarily from Outfalls 022, 023, 025, and 027, which flow directly or downstream into Right Fork of Leatherwood Creek, which is a tributary of the Elk River. Outfalls 022 and 025 discharge into Right Fork of Leatherwood Creek. Outfall 023 discharges into Rocklick Fork of Right Fork of Leatherwood Creek. Outfall 027 discharges into Cannel Coal Hollow of the Right Fork of Leatherwood Creek.

35. On September 3, 2003, WVDEP modified WV/NPDES Permit No. WV1013815 to authorize discharges from Fola's Surface Mine No. 4A. This permit was renewed in 2006 and 2008 and remains in effect. The permit regulates discharges from Surface Mine #4A, including Outfalls 022, 023, 025 and 027. It also requires instream monitoring of concentrations of several pollutants in Right Fork.

36. Part C of WV/NPDES Permit No. WV1013815 incorporates by reference 47 C.S.R. § 30-5.1.f, which provides that: "The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the Department of Environmental Protection, Title 47, Series 2." WVDEP's narrative water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

37. In its 2003 Cumulative Hydrologic Impact Assessment prior to the issuance of Fola's permits for Surface Mine No. 4A, WVDEP evaluated conditions in the Leatherwood Creek watershed above monitoring point P-12. The CHIA stated that "[t]he two sites on the upper reaches of the [Right] Fork, before it's confluence with Rocklick Fork show low buffered stream with low metals and low sulfates, indicative of no previous mining impact in the watershed in it's upper reaches. The other two sites are further downstream after mined tributaries enter the stream. The analyses shows that the Manganese and sulfates are elevated from previous mining." The CHIA also summarized results from benthic sampling showing that "[a]ll the stations have high EPT indexes."

38. Fola's July 2001 study of water chemistry and benthic macroinvertebrates found the following levels of conductivity and sulfate and West Virginia Stream Condition Index (WVSCI) scores at the mouth of Right Fork of Leatherwood Creek at site FOLA-6:

| Date | Cond | Sulfate | WVSCI |
|---|---|---|---|
| Fall 1999 | 736 | 280 | |
| Spring 2000 | 556 | 152 | |
| Fall 2000 | 742 | 152 | 86 |
| Spring 2001 | 461 | 120 | 59 |

39. Two other upstream sites in Right Fork had the following levels of conductivity and sulfate and WVSCI scores in Spring 2001:

| Site | Description | Cond | Sulfate | WVSCI |
|---|---|---|---|---|
| FOLA-7 | Rt Fk DS of Cannel Coal Hollow | 367 | 110 | 69.92 |
| FOLA-11 | Rt Fk US of Cannel Coal Hollow | 397 | 120 | 56.197 |

40. Since mining began, Fola has measured the following levels of conductivity at Outfalls 022, 023, 025 and 027:

| | Outfall/Conductivity | | | |
|---|---|---|---|---|
| Date | 022 | 023 | 025 | 027 |
| 10/5/11 | 1438 | 2840 | | 1934 |

8

| Date | | | | |
|---|---|---|---|---|
| 10/17/11 | 1774 | 3490 | | 2220 |
| 11/1/11 | 1730 | 2630 | 2390 | 3970 |
| 11/11/11 | 1884 | 2790 | 2680 | 2420 |
| 12/2/11 | 1649 | 3450 | 1972 | 2220 |
| 12/13/11 | 1771 | 3450 | 2140 | 2210 |
| 7/2/12 | 1848 | 2800 | | 2240 |
| 7/12/12 | 1944 | 2890 | | 2300 |
| 8/3/12 | 1848 | 2370 | | 1379 |
| 8/15/12 | 1690 | 3540 | | 2070 |
| 9/6/12 | 1886 | 3430 | | 2360 |
| 9/24/12 | 1594 | 2710 | | 1756 |

41. Fola has also measured the levels of conductivity and sulfate downstream from these Outfalls at various points along Right Fork. Monitoring point DCCH (P-9) is located in Cannel Coal Hollow just before its confluence with Right Fork and downstream from Outfall 027. Monitoring points DRFLC (P-10) and DRFLC (P-11) are located further downstream in Right Fork of Leatherwood Creek above and below Bullpen Fork. The monitoring data at these points are summarized in the following table:

| Date | DCCH Cond | DCCH Sulf | DRFLC P-10 Cond | DRFLC P-10 Sulf | DRFLC P-11 Cond | DRFLC P-11 Sulf |
|---|---|---|---|---|---|---|
| 1/13/10 | 1956 | 546 | 2770 | 1096 | 1728 | 1505 |
| 2/4/10 | 961 | 492 | 1967 | 1144 | 1645 | 890 |
| 3/4/10 | 1113 | 509 | 2809 | 1085 | 1592 | 1022 |
| 4/15/10 | 1235 | 676 | 2950 | 1267 | 1860 | 1065 |
| 5/3/10 | 986 | 495 | 1296 | 653 | 1042 | 504 |
| 6/1/10 | 1417 | 824 | 2900 | 1196 | 1884 | 1056 |
| 7/8/10 | 1452 | 963 | 3120 | 1308 | 2720 | 1412 |
| 8/2/10 | 1188 | 640 | 2390 | 1074 | 1902 | 1003 |
| 9/16/10 | 1638 | 888 | 2920 | 1498 | 2840 | 1337 |
| 10/15/10 | 1458 | 776 | 3140 | 1276 | 2830 | 1219 |
| 11/4/10 | 1156 | 606 | 2690 | 1129 | 1806 | 964 |
| 12/1/10 | 894 | 420 | 1263 | 575 | 1204 | 573 |
| 1/18/11 | 1272 | 656 | 3140 | 822 | 1863 | 881 |
| 2/2/11 | 900 | 481 | 1733 | 952 | 1368 | 706 |
| 3/1/11 | 670 | 311 | 1434 | 726 | 1042 | 495 |
| 4/5/11 | 1100 | 567 | 2980 | 1221 | 1739 | 960 |
| 5/4/11 | 1534 | 980 | 2790 | 1869 | 1631 | 925 |

9

| | | | | | | |
|---|---|---|---|---|---|---|
| 6/8/11 | 3260 | 1257 | 2840 | 897 | 2370 | 1180 |
| 10/4/11 | 1302 | | 1959 | 1959 | 1780 | |
| 10/27/11 | 1750 | | | 2270 | 2060 | |
| 11/10/11 | 2700 | | 2940 | 2940 | 2580 | |
| 11/23/11 | 827 | | | 1356 | 1023 | |
| 12/1/11 | 1720 | | 2780 | 2780 | 1744 | |
| 12/29/11 | 1452 | | | | 2010 | 1603 |
| 1/11/12 | 1802 | 954 | 2880 | 1264 | 2575 | 1083 |
| 2/8/12 | 1686 | 871 | 2210 | 1179 | 1826 | 1031 |
| 3/5/12 | 1328 | 1032 | 1820 | 815 | 1499 | 488 |
| 7/3/12 | 1890 | 1155 | 3120 | 1203 | 3220 | 1394 |
| 7/18/12 | 1976 | | 2310 | | 2080 | |
| 8/7/12 | 1628 | 1123 | 2510 | 1206 | 2220 | 1112 |
| 8/24/12 | 1904 | | 2010 | | 2560 | |
| 9/5/12 | 1220 | 643 | 1826 | 1012 | 1654 | 878 |
| 9/18/12 | 1543 | | 1846 | | 1735 | |

42.     On September 25, 2007, WVDEP measured the West Virginia Stream Index Score (WVSCI) score at the mouth of Right Fork of Leatherwood Creek (mile point 0) to be 54.02. On April 25, 2012, WVDEP measured the WVSCI score at that same location to be 19.45. On August 9, 2011, WVDEP measured the WVSCI score downstream at the mouth of Leatherwood Creek (mile point 0.2) to be 65.37. WVDEP considers streams with WVSCI scores below 68 to be biologically impaired.

43.     High levels of conductivity, dissolved solids, and sulfates are a primary cause of water quality impairments downstream from mine discharges. A 2012 peer-reviewed scientific study by Cormier, et al., found that:

> The extent of surface mining within catchments is highly correlated with the ionic strength and sulfate concentrations of receiving streams. Generalized additive models were used to estimate the amount of watershed mining, stream ionic strength, or sulfate concentrations beyond which biological impairment (based on state biocriteria) is likely. We find this threshold is reached once surface coal mines occupy >5.4% of their contributing watershed area, ionic strength exceeds 308 $\mu S\ cm^{-1}$, or sulfate concentrations exceed 50 mg $L^{-1}$.

44.     Fola's Surface Mine No. 4A is a major development activity covering 1743 acres

of the total of 10,321 acres in the Leatherwood Creek watershed above threshold monitoring point P-12, or about 17% of the total acres. That mine covers a much larger percentage of the Right Fork watershed. The high mining intensity in that watershed and the related discharges from Outfalls 022, 023, 025, and 027 have likely caused or materially contributed to biological impairment in the Right Fork of Leatherwood Creek, as well as downstream in the main stem of Leatherwood Creek.

45. On the basis of Fola's continuing violations of the water quality standards incorporated into its WV/NPDES Permit No. WV1013815 and the absence of any evidence of any meaningful efforts by Fola to eradicate the cause of the violations, Plaintiffs allege that Fola is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

## FIRST CLAIM FOR RELIEF

**(Clean Water Act Violations)**

46. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 45 above.

47. Since at least September 2007, Fola's Surface Mine #4A has discharged pollutants from its operations through point sources, i.e., Outfalls 022, 023, 025, and 027, into Leatherwood Creek and its tributaries, including Right Fork and Rocklick Fork, pursuant to WV/NPDES Permit No. WV1013815.

48. Leatherwood Creek and its tributaries, including Right and Rocklick Forks, are waters of the United States within the meaning of 33 U.S.C. § 1362(7).

49. Since at least September 2007, Fola has discharged, and continues to discharge, pollutants which cause ionic stress and biological impairment in Leatherwood Creek and its tributaries, including Right and Rocklick Forks, in violation of West Virginia's narrative water quality standards for biological integrity and aquatic life protection. 47 C.S.R. §§ 2-3.2.e & 2-

11

3.2.i.

50.     The narrative water quality standards for biological integrity and aquatic life protection incorporated by reference into Part C of Fola's WV/NPDES Permit No. WV1013815 are "effluent standards or limitations" for purposes of Sections 505(a)(1) and 505(f)(6) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

51.     Based on the WVSCI scores and measured concentrations of specific conductivity and sulfates in Fola's discharges, and its failure to take corrective actions to address those conditions, Plaintiffs believe and allege that Fola is in continuing and/or intermittent violation of its WV/NPDES Permit No. WV1013815 and the CWA.

52.     Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, Fola is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit No. WV1013815.

53.     Fola is subject to an injunction under the CWA ordering it to cease its permit violations.

## SECOND CLAIM FOR RELIEF

### (SMCRA Violations)

54.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 45 supra.

55.     Fola's WVSCMRA Permit S200502 requires it to comply with performance standards of the WVSCMRA. 38 C.S.R. § 2-3.33(c).

56.     Those standards provide that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b.

12

57. West Virginia water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

58. WVSCMRA performance standards also provide that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5. "Material damage," at a minimum, includes violations of water quality standards.

59. By violating West Virginia water quality standards for biological integrity and aquatic life protection at its Surface Mine No. 4A, Fola has also violated, and is continuing to violate, the performance standards incorporated as conditions in its WVSCMRA Permit S200502.

60. Federal and State performance standards require that, "[i]f drainage control, restabilization and revegetation of disturbed areas, diversion of runoff, mulching, or other reclamation and remedial practices are not adequate to meet the requirements of this section and § 816.42, the operator shall use and maintain the necessary water-treatment facilities or water quality controls." 30 C.F.R. § 816.41(d)(1); see also 38 C.S.R. § 2-14.5.c ("Adequate facilities shall be installed, operated and maintained using the best technology currently available in accordance with the approved preplan to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this subsection.").

61. The violations identified herein show that Fola's existing treatment methods are insufficient to meet that requirement. Thus, the performance standards require Fola to construct systems that will effectively treat its effluent to levels that comply with all applicable water quality standards.

62. Each violation of Fola's WVSCMRA permit is a violation of SMCRA and is enforceable under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a).

63. Fola is subject to an injunction under SMCRA ordering it to cease its permit violations.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that Fola has violated and is in continuing violation of the Clean Water Act and SMCRA;

2. Enjoining Fola from operating its facilities at Surface Mine No. 4A in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit No. WV1013815;

3. Ordering Fola to immediately comply with the effluent limitations in WV/NPDES Permit No. WV1013815;

4. Ordering Fola to immediately comply with the terms and conditions of WVSCMRA Permit Number S200502;

5. Ordering Fola to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

6. Ordering Fola to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

7. Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

8. Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ DEREK O. TEANEY**
DEREK O. TEANEY (W.Va. Bar No. 10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

Counsel for Plaintiffs